UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JOHN and LISA HEINEMAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:09-CV-181 |
| v. ) | Chief Judge Curtis L. Collier |
| ) | |
| TERRA ENTERPRISES, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM**

Plaintiffs John and Lisa Heineman (collectively, "Plaintiffs") bring suit against Defendants Terra Enterprises, LLC and Melinda Stokes (collectively, "Defendants") for declaratory judgment, pursuant to 28 U.S.C. §§ 2201 *et seq.*, to quiet title, to enjoin a trespass, and for damages resulting from Defendants' removal of sandstone from Plaintiffs' property (Court File No. 1). Now pending before the Court is Defendant Stokes' motion to dismiss (Court File No. 27), Plaintiffs' and Defendants' cross-motions for summary judgment (Court File Nos. 34, 28), and Defendants' motion for leave to amend (Court File No. 56). For the following reasons, the Court will **DENY AS MOOT** Defendant Stokes' motion to dismiss to the extent Plaintiffs are the legal owners of 71 acres of land (Court File No. 27), **DENY** Defendants' motion for summary judgment (Court File No. 28), **DENY** Defendants' motion for leave to amend (Court File No. 56), and **GRANT IN PART** Plaintiffs' motion for summary judgment as to Counts One, Two, and Three of Plaintiffs' complaint and as to Defendant Terra Enterprises' counterclaim (Court File No. 34). The Court will **DENY IN PART** Plaintiffs' motion for summary judgment as to Counts Four, Five, and Six. The Court will **RESERVE RULING** on damages as to Counts Two and Three of Plaintiffs' complaint until adjudication of Plaintiffs' remaining claims.

## I. BACKGROUND INFORMATION

### A. Relevant Facts

Plaintiffs have a property interest in approximately 225 acres of property designated as Map 10, Parcel 004.10, and Map No. 005, Parcel No. 004.00 in Marion County, Tennessee.[1] Defendant Terra Enterprises, LLC ("Terra Enterprises") is the holder of the deed to the "minerals" located on or under the property. The mineral rights on the property belonging to Plaintiffs were severed from the surface estate in 1928 when Sewanee Fuel & Iron Company ("Sewanee") retained for itself the mineral rights, after it sold the remainder of the property to Lewis D. Johnson & Sons, Inc. The deed, which is recorded in Marion County Record of Deeds, Deed Book NNN, pages 28 to 52, states in pertinent part:

> The grantor, SEWANEE FUEL & IRON Company, reserves to itself, its successors and assigns, the coal, oil, gas and any and all other minerals of any nature whatsoever which may be upon or under the above described parcel of land, and the right to mine or otherwise remove the [same] without liability for any damage to the surface rights, and the grantor reserves unto itself, also full rights of ingress, egress, regress and all rights-of-way for railways, tramways, wagon roads, power and telephone lines and many and all other rights-of-way which may be [necessary] or convenient in mining, drilling or otherwise [recovering] any of the mineral interests in said land and transporting the same to market or to manufacturing or refining plants [where] any of said materials may be prepared for market, including pipe lines; and this reservation [of] rights-of-way is to be equally valid whether such rights-of-way are used in connection with the mineral interests in the above tract of land or in connection with mineral interests on other lands of the grantor, its successors and assigns.

(Court File No. 36-2 at 4).

---

[1] At the time Plaintiffs filed suit, they held equitable title in all 225 acres. As of January 19, 2011, however, Plaintiffs obtained sole legal interest in 71 acres of the property (Court File No. 48). To the Court's knowledge, Deitrich and Christa Neckien remain the legal title holders of the remainder of the property.

Lewis D. Johnson & Sons, Inc. sold the remainder of the estate to Edward K. Pritchard in 1993, and the property continued to be sold until it was bought by Deitrich and Christa Neckien who sold the property to Plaintiffs (Court File No. 35). Specifically, Plaintiffs executed two separate land contracts in 2003 and 2004 for the purchase of the 225 acres of property.

Sewanee's mineral rights "on and under the property" were eventually purchased by Herman Baggenstoss, who, on June 29, 1990, filed a claim of mineral interest in the Marion County Registrar's Office (Court File Nos. 1, 29).[2] After the death of Mr. Baggenstoss in 1992, taxes on the mineral interest were not paid (Court File No. 29). Marion County, Tennessee unsuccessfully tried to sell the mineral rights in a tax sale on March 17, 2006. As a result, the county remained as the listed purchaser until the rights were purchased by Defendant Terra Enterprises in 2007 (Court File No. 1).

In March 2008, Defendant Melinda Stokes, as owner and operator of S&S Stone, entered into a mineral lease with Terra Enterprises, as mineral rights holder, to mine "fieldstone," or in this case sandstone, from the property, including that belonging to Plaintiffs (Court File No. 29-2, Affidavit of Melinda Stokes; Court File No. 36-4, Lease Agreement). S&S Stone traveled on old single-track roads and created a new road to access the stone (Court File No. 29). According to Defendants, S&S Stone employees were "careful to minimize disturbance to the surface [of the property] and existing mature trees consistent with the mining industry and the Defendant's practices" (*id.*).

On or about July 18, 2008, Plaintiffs discovered damage to their property. According to Plaintiffs, Defendants cut a dirt road into the property, destroyed and severely damaged several acres

---

[2] Mr. Baggenstoss's claim for mineral interests included "all iron, ore, gas, oil, Methane, hydrocarbons, occluded natural gas, limestone, sandstone and all other minerals, except coal . . . ." (Court File No. 29 at 16).

of trees, and improperly removed stone from the property (Court File No. 36-1). On July 21, 2008, the owner of Defendant Terra Enterprises sent a letter to Plaintiffs informing them of his intention to remove stone from the Plaintiffs' property (Court File No. 36). On August 21, 2008, Plaintiffs sent a letter to Defendants asking them to cease and desist their actions on Plaintiffs' property (*id.*). A few weeks later, S&S Stone removed its equipment from the land.

### B. Procedural Background

On July 2, 2009, Plaintiffs filed suit in this Court against Defendants (Court File No. 1). Plaintiffs assert six causes of action. Count One alleges Defendants "interfered with Plaintiffs' right to their property by destroying a portion of the surface of the land to which Plaintiffs hold equitable title" (*id.* at 7). Plaintiffs urge they "are entitled to a declaratory judgment quieting title to their property by interpreting the scope of the mineral rights held by Defendant [Terra Enterprises] under Tennessee law such that 'minerals' do not include sandstone and other rocks on or near the surface of Plaintiffs' property," and in the alternative, "by interpreting the scope of [Terra Enterprise's] right to remove any minerals to exclude such methods as would destroy the surface rights of the Plaintiffs" (*id.* at 7-8; *see also* Court File No. 36). Count Two asserts a cause of action for trespass. Plaintiffs allege Defendants "intentionally entered onto Plaintiffs' land for multiple months without Plaintiffs' knowledge and without Plaintiffs' actual or implied consent" (Court File No. 1 at 8). Plaintiffs assert Defendants are liable for the loss of use of Plaintiffs' property, loss of rental value and diminution in value. Count Three states Defendants' removal of sandstone from Plaintiffs' property constituted an illegal removal of Plaintiffs' property and asserts a cause of action for conversion.

Count Four alleges Defendant Terra Enterprises "has used its property, the mineral rights it

4

owns, in such a manner as to interfere with the use and enjoyment of Plaintiffs' surface rights, and has, therefore, created and maintained a nuisance." Specifically, Plaintiffs contend that by Defendants removing rock from Plaintiffs' land, they damaged and destroyed a large part of Plaintiffs' land. Count Five states a claim for negligence and negligence per se. Plaintiffs argue Defendants breached their duty of care owed to Plaintiffs by entering upon Plaintiffs' land without permission and by destroying the property. Plaintiffs also allege Defendants violated the Tennessee Water Pollution Control Act, and violations of such Act constitute negligence per se. Finally, Count Six states a claim for gross negligence, and Plaintiffs contend they are entitled to punitive damages.

On September 30, 2009, Defendant Terra Enterprises filed a counter-complaint against Plaintiffs for inducement of the breach of an enforceable contract and interference with a prospective economic advantage (Court File No. 2).

## II.     MOTION TO DISMISS

### A.     Standard of Review

Pursuant to Fed. R. Civ. P. 19(a)(1), a party must join all parties "needed for just adjudication." The rule reads in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action must be joined as a party if (A) in that person's absence, the court cannot afford complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(7) allows a

court to dismiss an action for "failure to join a party under Rule 19."

Whether a complaint should be dismissed under Rule 19 involves a three-step process. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). First, a court must determine whether a person is "necessary to the action" for one of the reasons enumerated in Rule 19(a). *Painewebber, Inc., v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). Next, a court must consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction. *Id.* Finally, the court must "determine whether in equity and good conscience" the absent party should be regarded as indispensable so as to prevent the action from proceeding in its absence. Fed. R. Civ. P. 19(b); *see Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir. 1999). This analysis

> requires consideration of four factors: (1) to what extent a judgment rendered in the person's absence might prejudice the person or those already parties; (2) the extent to which the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Soberay*, 181 F.3d at 764.

**B.     Discussion**

Here, Defendant Stokes argues this matter should be dismissed pursuant to Rules 12(b) and 19 of the Federal Rules of Civil Procedure because Plaintiffs failed to join an indispensable party, Christa Neckien, who is the legal owner of some of the property involved in the suit (Court File No. 27).[3] Defendant Stokes argues "if the Defendants prevail in this action and thereafter the Plaintiffs default on their installment contract, [] Neckien would continue to be the legal owner of the

---

[3] At this time, the parties have not indicated to the Court that Plaintiffs are the legal owners of all 225 acres.

6

property, yet she would not be bound by the outcome of this case" (*id.* at 4).

Plaintiffs, in opposition to the motion to dismiss, late-filed a response arguing Defendant Stokes' motion should be denied as moot (Court File No. 47). For support, Plaintiffs state as of January 19, 2011, Plaintiffs hold legal title to 71 acres of the property in question (*id.*). In addition, Plaintiffs contend "these acres encompass the area disturbed by Defendants' activities" (Court File No. 48).

Nevertheless, because there is no evidence that the Neckiens are no longer the legal owners of the remaining 154 acres, the Court will still employ the three-part analysis detailed above to determine whether Plaintiffs' complaint should be dismissed. Applying the first factor, it appears the Neckiens are necessary to this action as defined under Fed. R. Civ. P. 19(a). Indeed, Defendant Stokes could be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest" claimed by Plaintiffs. The second prong of the analysis, however, requires this Court to determine whether the Neckiens may be joined without destroying jurisdiction in this case. Here, the parties have not provided any indication as to whether the Court has personal jurisdiction over the Neckiens or whether joining the Neckiens would destroy diversity jurisdiction in this case. For this reason, it is impossible to determine whether joinder would have been feasible. Finally, this Court must determine whether the Neckiens are indispensible parties.

In their response, Plaintiffs assert the 71 acres to which they are now legal owners encompasses the property allegedly damaged by Defendants. Accordingly, the Court finds Plaintiffs would not be without legal remedy if this Court limits this action to those 71 acres. Therefore, the Court will **DENY IN PART as MOOT** Defendant Stokes' motion to dismiss as to the 71 acres owned by Plaintiffs (Court File No. 27). On the other hand, the Court will limit Plaintiffs' claims

to those involving the 71 acres; any claims with respect to the remaining 154 acres will be **DISMISSED**.

## III. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**B.   Analysis**

**1.   Sandstone is not a Mineral**

The threshold issue, in regards to Plaintiffs' first three causes of action, is whether the parties to the 1928 deed intended sandstone to be included as part of the mineral rights reservation. In order for the Court to determine the rights and obligations of the parties as delineated in the deed, the Court must first look to the language of the deed itself. *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004).

Under Tennessee law, "the overriding purpose of the Court in interpreting [a] contract [or deed] is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Hamblen Cnty. v. City of Morristown*, 656 S.W.2d 331, 334 (Tenn. 1983); *see also Doochin v. Rackley*, 610 S.W.2d 715, 718 (Tenn. 1981) ("In analyzing deeds of conveyance the traditional common law rule, of course, is to ascertain the intent of the contracting parties in light of circumstances existing at the time"). "If the [written instrument] is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms." *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). Nonetheless, the Court may consider the circumstances surrounding the parties at the time the instrument was written in order to aid the Court in determining the meaning of the deed.

9

*Hamblen Cnty.*, 656 S.W.2d at 334.

Here, the deed plainly states, "the grantor, SEWANEE FUEL & IRON Company, reserves to itself, its successors and assigns, the coal, oil, gas and any and all other minerals of any nature whatsoever which may be upon or under the above described parcel of land, and the right to mine or otherwise remove the [same] without liability for any damage to the surface rights . . . ." (Court File No. 36-2). Yet, the parties dispute whether sandstone falls within the meaning of the word "mineral" and whether Defendants acted beyond the scope of the deed. Because it is almost impossible to ascertain the intent of the original parties to the 1928 deed in this case, all of the parties have relied on technical definitions of the word "mineral," as well as expert opinions.

In their motion for summary judgment, Plaintiffs attempt to distinguish between rocks and minerals. They first offer the declaration of Dr. Don Byerly, a geologist, who explains while a rock may consist of one or more minerals, among other things, a rock is not a mineral (Court File No. 36-11).

Furthermore, Plaintiffs argue Sewanee did not intend to include rock or stone as a part of the mineral reservation in the 1928 deed (Court File No. 36). It is clear Sewanee was in the fuel and iron ore business and not the rock business. "There is no evidence of any contemplation that the ever-present sandstone should be included in any mineral rights reservation" despite the seemingly broad language of the mineral reservation at issue (*id.* at 10).

In contrast, Defendants argue the ordinary and common meaning of the word "mineral" clearly includes stone (Court File No. 29 at 7). For support, Defendants cite *Black's Law Dictionary* and *Webster's New International Dictionary* for the definitions of "mineral" and "rock" to show sandstone is a mineral. Defendants also contend that the Tennessee Surface Mining Law

10

of 1972, Tenn. Code Ann. § 69-8-202(7)(b), and the Mineral Test Hole Regulatory Act, Tenn. Code Ann. § 60-1-503(3) both advance broad definitions of the word "mineral" (*id.*).

Moreover, Defendants assert the "clear, expansive, inclusive language of the mineral reservation clearly reflects the intent of Sewanee to keep everything except the surface. The 'surface' was that which could be used for agricultural purposes and timbering" (*id.* at 6). To bolster this argument, Defendants rely on both the opinions of their expert and Plaintiffs' expert. For instance, Timothy J. Young, who is a geologist, believes language in the 1928 deed "was intended to allow Sewanee to retain any and everything except the surface . . . ." (Court File No. 29-2). Even Plaintiffs' expert, Dr. Donald W. Byerly, agreed during his deposition that when lay persons use "every day nomenclature," they often "lump . . . rocks and stone and sand and gravel and oil and coal and various items like that" into the "same category as minerals" (Court File No. 29-2 at 30).

Although the Court finds Defendants' arguments superficially appealing, the Court does not agree that definitions of the term "mineral" are so widely divergent. Rather, this case is somewhat analogous to *Campbell v. Tenn. Coal, Iron & R. Co.*, 265 S.W. 674 (Tenn. 1921), which involved the question of whether limestone was intended by the original parties to be included in the mineral estate. There, the court held limestone was not intended to be a part of the mineral reservation. However, the court did not base its decision on the technical meaning of the word "mineral"; rather, it based its decision on the fact that "if the reservation [was] construed to include limestone, it [would destroy] the conveyance, for by quarrying the limestone the entire surface would be made way with." *Campbell*, 256 S.W. at 676.

Here, the Court will ascertain the parties' intent by considering the dictionary meanings of mineral, sandstone, and rock; the meaning of each word in light of the deed as a whole; and the

11

effect each party's interpretation would have on the actual conveyance.

### a. Parties' Intent – Dictionary Meaning

Returning to the threshold issue, that is, the intent of the parties, it is impossible to determine what was in the minds of the parties at the time the deed was drafted other than by relying upon the words the parties chose to use in the deed itself. The Court should give to those words their common, ordinary meaning unless some special meaning was intended. *State v. Lahiere-Hill, L.L.C.*, 278 S.W.3d 745, 752 (Tenn. Ct. App. 2008) ("[U]nless there is some reason to believe that the grantor and grantee relied upon a 'super-technical, scientific definition [of the word "mineral"],' such a definition is not dispositive or even terribly relevant, and the 'popular' definition is much more important, as it represents the 'plain and ordinary meaning' . . . ."). The word "mineral" has a common, ordinary meaning, and nothing in the language of the deed suggests this word had any special meaning apart from its common, ordinary meaning.

*Webster's Third New International Dictionary* defines "mineral" as

> a solid homogeneous crystalline chemical element or compound (as diamond or quartz) that results from the inorganic processes of nature and that has a characteristic crystal structure and chemical composition or range of compositions.

*Webster's Third New International Dictionary* 1437 (1993). The secondary meanings are consistent with this definition and emphasize that the substance is homogenous or apparently homogenous. *See id. Webster's* definition would, therefore, exclude sandstone since sandstone does not have a homogenous composition and does not possess a crystal structure.[4]

---

[4] Even after comparing this definition of "mineral" to definitions from the time period the deed was drafted, the Court still reaches the same conclusion. For example, two earlier versions of *Webster's* define "mineral" as "any chemical element or compound occurring naturally as a product of inorganic processes." *Webster's New International Dictionary of the English Language Unabridged* 1563 (2d ed. 1944); *Webster's New International Dictionary of the English Language*

12

Sandstone, rather than being a mineral, is a rock or stone. For our purposes, *Webster's* defines "rock" as follows:

> consolidated or unconsolidated solid mineral matter composed of one or usually two or more minerals or partly of organic origin (as coal) that occurs naturally in large quantities or forms a considerable part of the earth's crust.

*Id.* at 1965.

Finally, "stone" is defined by *Webster's* as being "a concretion of earthy or mineral matter of igneous, sedimentary, or metamorphic origin." *Id.* at 2249. These definitions are in accord with the commonly understood meanings of these words and are not based upon technical geological or scientific definitions.

### b. Parties' Intent – Similarity of Words

The Court is required to consider the deed as a whole and to give meaning to each word used. *See Baird v. S. Ry. Co.*, 166 S.W.2d 617, 618 (Tenn. 1942). The deed reserves to the grantor "the coal, oil, gas and any and all other minerals" (Court File No. 36-2 at 4). Coal, oil, and gas are commonly understood to be substances of a homogeneous composition. "Minerals," being the last in a series of words sharing a commonality, should be interpreted to share that same common ingredient, which can be achieved by giving the word "mineral" the common, ordinary meaning *Webster's* ascribes to it.

### c. Parties' Intent – Destruction of Surface

Lastly, if we adopt Defendants' suggested definition of mineral (that is, "rock"), then that

---

1375 (1925). Further, minerals are "usually solids," and "[e]xcept in rare instances they have a definite molecular structure which manifests itself in crystal form." *Id.* Because this definition and the definitions of "rock" and "stone" are substantively similar to those in the third edition of *Webster's*, the Court still finds sandstone is not a mineral, but rather a rock or stone.

13

would mean the entire bedrock underlying the land could be removed. This would make the conveyance illusory because, applying the court's reasoning in *Campbell*, "it [would destroy] the conveyance, for by [removing the bedrock] the entire surface would be made away with." Such an expansive view requires more support than the simple use of the word "mineral."

For the above reasons, the Court concludes that "substances such as sand, gravel[,] [sandstone,] and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value." *See Hart v. Craig*, 216 P.3d 197, 198 (Mont. 2009) (quoting *Heinatz v. Allen*, 217 S.W.2d 994, 997 (Tex. 1949)). Otherwise, there would be nothing left for the surface owners. Accordingly, the Court finds sandstone is not a part of the mineral reservation in this case.[5]

    2.    **Plaintiffs' Claims**

        a.    **Quiet Title**

Plaintiffs' first claim alleges Defendants "interfered with Plaintiffs' right to their property by destroying a portion of the surface of the land to which Plaintiffs hold equitable title" (Court File No. 1 at 7). Plaintiffs urge they "are entitled to a declaratory judgment quieting title to their property by interpreting the scope of the mineral rights held by Defendant [Terra Enterprises] under Tennessee law such that 'minerals' do not include sandstone and other rocks on or near the surface

---

[5]On July 28, 2011, Defendants filed a joint motion for leave to amend their previously filed motion for summary judgment (Court File No. 56). Defendants submit they have discovered an actual resolution from a Sewanee Director's Meeting on January 26, 1928, "confirming and approving the conveyance of timber and the surface, a portion of which includes the Plaintiffs['] property" (*id.* at 2). This new discovery, however, does not alter the Court's analysis. Because the language of the deed is plain and unambiguous, additional information about the intent of Defendants' predecessor-in-interest does not control the Court's interpretation of the deed. Accordingly, the Court will **DENY** Defendants' motion for leave to amend (Court File No. 56).
14

of Plaintiffs property," and in the alternative "by interpreting the scope of [Terra Enterprise's] right to remove any minerals to exclude such methods as would destroy the surface rights of the Plaintiffs" (*id.* at 7-8; *see also* Court File No. 36). Because this Court finds sandstone is not a mineral in the context of the 1928 deed, the Court will **GRANT** Plaintiffs' motion for summary judgment as to Count One of the complaint. This Court finds Plaintiffs are entitled to a declaratory judgment quieting title to the 71 acres for which Plaintiffs hold legal title.

### b. Trespass

In Count Two, Plaintiffs allege Defendants trespassed on Plaintiffs' property when Defendants entered onto Plaintiffs' property without Plaintiffs' knowledge or permission (Court File No. 1). While this Court finds Defendant Terra Enterprises may enter Plaintiffs' property in compliance with the terms of the 1928 deed, here Defendants acted outside of the scope of the deed. Accordingly, the Court will **GRANT** Plaintiffs' motion for summary judgment as to Count Two of the complaint (*id.*). The Court finds, as a matter of law, Defendants trespassed onto Plaintiffs' property. The Court will **RESERVE RULING** on damages.

### c. Conversion

Count Three of Plaintiffs' complaint asserts a claim for conversion. Under Tennessee law, conversion "is the appropriation of tangible property to a party's own use and benefit in exclusion of the owner's rights." *Thompson v. Thompson*, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009). To establish a claim for conversion, Plaintiffs must demonstrate Defendants exercised control over Plaintiffs' property, without consent, for Defendants' benefit. Here, the Court finds no genuine dispute as to this claim. The Court will **GRANT** Plaintiffs' motion for summary judgment as to Count Three of Plaintiffs' complaint. The Court will

15

**RESERVE RULING** on damages.

### d. Remaining Claims

In Counts Four through Six, Plaintiffs assert claims for nuisance, negligence and negligence per se, and gross negligence (Court File No. 1). The Court finds there is a genuine dispute as to these claims. In regards to Plaintiffs' claims for nuisance, negligence, and gross negligence, both parties have presented competing evidence to show whether Defendants caused damage to Plaintiffs' property (*see, e.g.*, Court File Nos. 36-6, 38-8, 36-10, 39-2, 39-3, 39-4). In regards to Plaintiffs' claim for negligence per se, Defendants argue Plaintiffs have failed to show "Defendants violated a statute, that the Plaintiffs are within the class of persons protected by the statute, and additionally that the Defendants['] negligence was the proximate cause of the Plaintiffs['] injury" (Court File No. 40 at 6). For these reasons, the Court will **DENY** Plaintiffs' and Defendants' motions for summary judgment as to Counts Four through Six.

### 3. Defendant's Counterclaim

Defendant Terra Enterprises brings a counterclaim against Plaintiffs on the grounds Plaintiffs induced the breach of an enforceable contract between Defendant Terra Enterprises and Defendant Stokes (Court File No. 2). The Court finds because Defendants did not have a legal right to extract sandstone from Plaintiffs' property, Plaintiffs were not the proximate cause of any breach. *See, e.g.*, *Campbell v. Matlock*, 749 S.W.2d 748, 751 (Tenn. Ct. App. 1987). Accordingly, the Court will **GRANT** Plaintiffs' motion for summary judgment as to Defendant's counterclaim. Defendant's counterclaim will be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY AS MOOT** Defendant Stokes' motion to dismiss to the extent Plaintiffs are the legal owners of 71 acres of land (Court File No. 27), **DENY** Defendants' motion for summary judgment (Court File No. 28), **DENY** Defendants' motion for leave to amend (Court File No. 56), and **GRANT IN PART** Plaintiffs' motion for summary judgment as to Counts One, Two, and Three of Plaintiffs' complaint and as to Defendant Terra Enterprises' counterclaim (Court File No. 34). The Court will **DENY IN PART** Plaintiffs' motion for summary judgment as to Counts Four, Five, and Six. The Court will **RESERVE RULING** on damages as to Counts Two and Three of Plaintiffs' complaint until adjudication of Plaintiffs' remaining claims.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**